UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL JEROME WILLIAMS,

    Plaintiff,

    v.

OFC. T. WATSON, *et al.*,

    Defendants.

CAUSE NO.: 3:17-CV-177-PPS-JEM

OPINION AND ORDER

Michael Jerome Williams, a prisoner without a lawyer, was granted leave to proceed against Officer T. Watson for retaliating against him in violation of the First Amendment by filing a false disciplinary report against Williams and encouraging other officers and inmates to verbally harass Williams. He was also granted leave to proceed against Mrs. B. McGee for retaliating against him in violation of the First Amendment by filing a false witness statement in support of Officer Watson's bogus charge. Williams seeks summary judgment arguing that the undisputed material facts entitle him to judgment as a matter of law. Neither of the defendants moved for summary judgment, and the deadline to do so has past. Because there is a genuine dispute of material fact, summary judgment must be denied.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and

identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* at 770 (quotation omitted).

Here is what is alleged to have happened. Officer Watson entered Williams' humanities class on November 1, 2016, between 8:00 a.m. and 8:53 a.m. (ECF 65-2 at 45, 53-54, 58.) Officer Watson began insulting various inmates in the class. (*Id.* at 45, 57-58.) Williams claims (and Officer Watson denies), that Officer Watson told Williams that, "I bet you like getting hugged by men. I bet you like rough hands on your back when you're getting fucked. I'm gonna make sure you get hugged tonight." (*Id.* at 18, 45.) Williams reported the comment and filed an administrative complaint under the Prison

2

Rape Elimination Act (PREA). (*Id.* at 55.) According to the prison's policy, Officer Watson and Williams were to remain separated while the PREA complaint was pending. (*Id.* at 261-71.) Williams was placed in a holding cell pending investigation. (*Id.* at 55.)

Williams alleges that when Officer Watson learned of the PREA complaint, she retaliated against him by issuing a false disciplinary report claiming that *he* had made the sexually explicit statements to *her*. (ECF 6 at 3-4.) According to Officer Watson's conduct report, at 8:17 a.m. on November 1, 2016:

> I Ofc. T. Watson was advising another offender that he has to be on time for school when offender Williams, Michael # 864989 yelled stating, "she got a bad ass attitude because ain't nobody hugging her ass at night." [illegible]Williams continued stating "yo attitude would be better if somebody was hitting that thang on a daily basis." I retrieved his information and informed him that he would be receiving a write up" Offender Williams then replied, "I don't give a fuck."

(ECF 65-2 at 51.)

Although it is unclear when Officer Watson learned that Williams had filed a PREA complaint against her, the conduct report was filed at 1:00 p.m. the same day. (*Id.*) Officer Watson's conduct report was supported by Librarian B. McGee's witness statement, which states:

> McGee was standing by the class room to ask a question about count. When I heard offender Williams, Michael #864989 say out loud that she has a attitude because she not getting hugged at night. It would be better if she was getting fucked.

3

(*Id.* at 52.) Williams tells me that McGee was not present where she could have heard the comments that she reported, that her allegations are false, and that they were made for the purpose of retaliating against him. (ECF 65 at 4.)

Williams further asserts that, after his relocation, Officer Watson entered Williams' new housing unit, spoke with a correctional officer, and then gave Williams a nasty look as she was leaving. (ECF 6 at 4.) Another officer then approached Williams and stated, "people who make complaints are cowards and snitches." (*Id.*) Two months later, Officer Watson again entered Williams' housing unit and gave him a dirty look. (ECF 71 at 2.) Williams alleges that, as a result of his interactions with Officer Watson, other prisoners accused him of being a "snitch" and an "officer slayer" and have threatened to "give [him] a reason to make a PREA report." (ECF 6 at 5.) Officer Watson, however, contends that she did not go anywhere that her employer did not ask her to go to execute her duties, and did not enter Williams' dorm with the purpose of intimidating him. (*Id.* at 65-2 at 9-10, 18.)

Williams' PREA complaint was investigated, and it was found to be unsubstantiated. (ECF 65-2 at 44.) By the same token, the conduct report against plaintiff was dismissed. (*Id.* at 59.) Williams asserts that the conduct report was dismissed because the allegations in it were not believable (ECF 65 at 5), but that is not a fair characterization of the evidence. The charges were dismissed because the investigator viewed Officer Watson's use of the phrase "hitting it" as similar but inconsistent with McGee's version of events, which used the phrase "getting fucked." (65-2 at 58-59.)

4

"To prevail on his First Amendment retaliation claim, [Williams] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). The defendants concede that Williams engaged in First Amendment activity, but they assert that there are genuine disputes of fact regarding whether he suffered a deprivation likely to deter future First Amendment activity and what motivated the allegedly retaliatory acts.

<u>Was the Deprivation Likely to Deter Future First Amendment Activity?</u>

"There is … a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.

*Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) (overruled on other grounds) (citations and quotation marks omitted); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Here, Williams was permitted to proceed on claims that he was retaliated against by the

filing of a false conduct report and supporting statement, and by encouraging other officers and inmates to verbally harass him.

Williams has alleged that Officer Watson entered his cell house on two occasions following the filing of the PREA complaint, that she gave him dirty looks, and that both guards and inmates made comments to him about being a snitch following those encounters. I cannot find that, *as a matter of law,* this deprivation is sufficient to deter an inmate of reasonable firmness from engaging in additional First Amendment activity. Because a reasonable jury could find for the defendants, this is a genuine dispute precluding summary judgment.

Furthermore, following both the filing of the conduct report and the alleged retaliatory harassment, Williams repeatedly asserted his First Amendment rights. Williams filed grievances on November 8, 2016, November 16, 2016, November 21, 2016, and December 19, 2016. (ECF 65-2 at 64, 65, 68, 70.) And, he filed his complaint in this case in February of 2017. (ECF 1.) The fact that Williams was not deterred from additional First Amendment activity raises a question about whether a similarly situated individual of ordinary firmness would have been deterred. *See West v. Grams*, 607 F. App'x 561, 565-66 (7th Cir. 2015) (noting that the alleged retaliation did not deter plaintiff, who filed "no less than 100 grievances" in the two years following the alleged retaliation). Because there is a genuine dispute of material fact regarding whether a similarly situated individual of ordinary firmness would have been deterred by the allegedly retaliatory acts, I cannot grant summary judgment in Williams' favor.

## Was Williams' PREA Complaint a Motivating Factor in Defendants' Conduct?

Williams contends that, despite the prison's policy requiring that Officer Watson be separated from Williams while his PREA complaint was pending, Officer Watson entered his dorm on two occasions, gave him dirty looks, and prompted both other prison staff and offenders to harass Williams for being a snitch. But Officer Watson tells me that she did not go anywhere that her employer did not ask her to go to execute her duties, and that she did not enter Williams' dorm with the purpose of intimidating him. If Officer Watson's version of events is credited by a jury, it would have been reasonable for her to have been present in Williams' dorm – although in violation of the prison's policies – and not for the purpose of retaliation. Because the evidence permits multiple interpretations, this issue must be decided by a jury, not me.

Williams alleges that Officer Watson filed the conduct report against him and McGee wrote her statement supporting that conduct report solely because he had filed the PREA complaint against Watson. The timing here supports an inference that the conduct report was filed in retaliation for filing the PREA complaint. But where there is evidence that the inmate engaged in conduct that would independently support the conduct report, there is a genuine dispute of material fact to be decided about whether the protected activity was a motivating factor behind the decision to issue a conduct report. *See Beamon v. Dittmann*, 720 F. App'x 772, 775-76 (7th Cir. 2017). Here, there is some evidence that Williams made inappropriate comments to Officer Watson that warranted the filing of the conduct report. While the conduct report was dismissed, a reasonable jury could credit Officer Watson's and McGee's version of events, finding

7

that the language used was so similar in meaning that the conduct report had a basis in fact. Furthermore, if Officer Watson's version of events is credited, then Watson had decided to write Williams up and communicated that decision to Williams before he filed his PREA complaint. This is some evidence that the decision to file the conduct report was independent of Williams' First Amendment activity. Because there are questions of fact to be determined regarding the motivations of the defendants, I cannot grant summary judgment in Williams' favor on this issue either.

Viewed in the light most favorable to the nonmoving parties, there is sufficient evidence for a reasonable factfinder to find for the nonmovants on each of Williams' claims. Because there are genuine disputes of fact that preclude summary judgment, Williams' motion for summary judgment (ECF 65) is DENIED.

ENTERED: January 11, 2019.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT